PHILLIPS *v.* BOSSARD *et al.*

*District Court, D. South Carolina.* May 22, 1888.)

1. BANKS AND BANKING—NATIONAL BANKS—CASHIER'S BOND—LIABILITY OF SURETIES.
   The sureties on a cashier's bond, reciting that B. had been elected cashier of a bank to hold his office during the pleasure of the board of directors, are liable for any default occurring while he continues to act as cashier.
2. SAME—RELEASE—MISCONDUCT OF PRESIDENT AND DIRECTORS.
   Where a cashier's bond is given to the "National Bank of Sumter," the sureties are not released from liability for a default of the cashier because such default was permitted by the negligence and misconduct of the president and board of directors.
3. SAME—RES ADJUDICATA—ATTACHMENT AGAINST CASHIER.
   A judgment against a defaulting cashier for embezzlement of $5,500 in gold, taken by him from the vaults of the bank, does not estop the bank from bringing an action on his official bond to recover amounts subsequently discovered to have been appropriated by him by means of false entries and omissions to account for sums received by express.
4. SAME—CREDIT FOR SUMS OTHERWISE COLLECTED.
   When the defalcations of a cashier exceed the amount of his bond, the bank need not credit on the bond sums collected from other sources, but may apply them in reduction of the unsecured balance.

At Law. Action by John E. Phillips, receiver of the National Bank of Sumter, against Bossard and others, sureties upon the bond of C. E. Bartlett, formerly cashier of said bank.

*L. F. Youmans,* Dist. Atty., and *Moise & Lee,* for plaintiff.

*J. H. Earle,* Atty. Gen., and *Mr. Purdy,* for defendants.

SIMONTON, J., (*charging jury.*) The action is on the bond of one C. E. Bartlett, cashier, teller, and book-keeper of the Sumter National Bank; defendants being his sureties. It is not disputed that the Bank of Sumter was a national banking association; that Bartlett was duly appointed cashier, teller, and book-keeper; that he gave the bond stated in the complaint; and that defendants, with three other persons, were his sureties. It is proved that plaintiff was duly appointed, upon the failure of the bank, its receiver, by the comptroller of the currency, and

that the latter authorized this suit.    Notwithstanding the objection urged
by the defendants that it has not been shown that the treasurer of the
United States also concurred in this authorization of the suit, it is prop-
erly brought.    The bond is in the penal sum of $10,000, and the con-
dition of it is for the faithful performance of his duties as cashier, teller,
and book-keeper, by Bartlett, his obedience to instructions, and his
faithful accounting for all moneys coming into his hands as such cash-
ier, etc.    The complaint sets forth 31 breaches of the bond.    They are
in three classes.    One class consisted of checks drawn by him on corre-
spondent banks in various large sums of money, which it is alleged that
he appropriated to his own use.    Evidence has been submitted showing
that, where he entered on the stub of the check-book the supposed
amount of the check, he put a sum greatly below the real amount of the
check, and posted the false amount in his ledger.    Another class of de-
falcations charged was the receipt of money of the bank by express, and
not accounting for it.    The third was the carrying off, on the night of
his flight from Sumter, a. bag of gold containing $5,500.    You have
heard the evidence on these points, and must say if they are proved.

The defendants set up four defenses:    First. That Bartlett was only
elected for one year, that the bond was executed when he was first elected,
and that their responsibility was ended when the year expired.    The
condition of the bond recites that Bartlett had been elected cashier, etc.,
to hold his office during the pleasure of the board of directors.    There is
no evidence showing that he was elected for one year, and none that he
ever was dismissed or removed from office, or elected more than once.
This defense cannot avail defendants.    Second. That the willful negligence
and misconduct of the president and board of directors permitted the
fraudulent acts of Bartlett, and the sureties consequently are not liable
therefor.    Assuming that the validity of the bond at its execution is not
disputed, no evidence to this effect having been shown, I charge you
that this defense, even if it be fully made out, cannot avail the defend-
ants.    The bond of Bartlett, signed by defendants, was given to the Na-
tional Bank of Sumter, not to the president, nor to the board of direct-
ors.    If he committed the defalcations and frauds charged, neither he
nor his sureties can be excused because of any negligence or omission of
duty on the part of the president or board of directors.    They could not
excuse, justify, or release them by a formal vote; a fortiori they cannot
be held to excuse or palliate them by conduct.    Minor v. Bank, 1 Pet.
71 et seq.    The bond was not given to secure the bank against such de-.
falcations as Bartlett could make without the knowledge of, or such as
were not within the means of discovery by, the president or directors;
nor was the bond given upon the condition that the president or the
board should watch him, and prevent any defalcation or fraud on his
part.    It was absolute in its terms, guarantying that he would faithfully
perform his duties, and account for all funds coming into his hands,
without reference to or respect for any one else.    Even if he acted with
the fraudulent connivance of the president, or any one or all of the board,
this would only make them partners in crime, and still his sureties would

be responsible. The *third* defense grows out of the facts which I recall to you: Bartlett absconded on Saturday night. When the vault was opened on Monday it was discovered that $5,500 in gold was missing, which had been there at the close of Saturday. At once attachment proceedings were begun, and certain of his property attached. The complaint was for his embezzlement of this sum as cashier, and judgment was had against him. The defendants contend that this suit and judgment estop the plaintiff. The attachment suit and this suit are not on the same cause of action. The first was on the embezzlement of a certain sum of money. This is on the breach of his official bond in not well and truly executing his duty as cashier, as well in that he did not faithfully account for money in his hands as for default in other transactions. When the attachment suit was brought, there was no knowledge of any other default than the theft of the $5,500; and the uncontradicted evidence is that the other defalcations were not suspected until Bartlett ran away, and were not known until some 10 days afterwards. This defense cannot avail the defendants. The *fourth* and last defense is this: The attachment suit realized about $1,000. The wife of Bartlett gave up to the bank an order on Henry Clews & Co., of New York, signed in blank by Bartlett. This was filled out with the balance to his credit with these bankers, and realized $2,400 more. Defendants insist that they are entitled to credit on the bond for this amount. If you believe the testimony, Bartlett's default was between $65,000 and $70,000. Against this the bank held the bond for $10,000. They credited the sum recovered and the sum received on the surplus. Bartlett could give no direction as to the first; he gave none as to the last. There is no room here for the application of the doctrine of subrogation. The bond of these defendants was to secure defaults to the extent of $10,000 only. If the defaults exceeded this, the bank had to look elsewhere. For securing the excess the bank could take all lawful means in its power. As the sureties had no responsibility for the excess, they had no interest in the means taken to secure it. For the $10,000 they were responsible. They are not entitled to any aid in paying it, except from such securities or collaterals, specially appropriated in the hands of the bank, or of any of the sureties, to meet it, and except also from recovery had on the bond itself. This defense cannot avail. If you find from the evidence that Bartlett has made default in the amount charged, or in any sum exceeding the amount of the bond, and of the money recovered and received as stated, you will find for plaintiff the full amount of this bond.